**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ABELARDO M.-G.,

Petitioner,

v.

DAVID EASTERWOOD, *Acting Director of St. Paul Field Office, U.S. Immigrations and Customs Enforcement*; DAVID VENTURELLA, *Acting Director, U.S. Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *Secretary of the U.S. Department of Homeland Security*; and MIKE STASKO, *Warden of the Freeborn Adult Detention Center*,

Respondents.

Case No. 26-cv-3479 (LMP/SGE)

**ORDER GRANTING HABEAS PETITION**

---

Stephen A. Pegnam, **Law Offices of Stephen A. Lagana, Lawrence, MA**; and Nicholas Ratkowski, **Ratkowski Law PLLC, St. Paul, MN**, for Petitioner.

Derek Ganzhorn, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[1]

Petitioner Abelardo M.-G.[2] brings a petition for a writ of habeas corpus, challenging the legality of his arrest and detention. For the following reasons, the petition is granted, and the Court orders Abelardo's release from detention.

---

[1] When used in this Order, "Respondents" or "Government" refer to the federal officials named as Respondents. Respondent Mike Stasko of Freeborn County has not participated in these proceedings.

[2] The Court uses the petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any nongovernmental parties in immigration cases. No disrespect is intended in doing so.

## BACKGROUND

Abelardo is a native and citizen of Mexico who entered the United States in 2020 and has lived in Minnesota since that time. ECF No. 1 ¶¶ 3, 5. Abelardo has been law abiding since he came to the United States. ECF No. 8-1 at 2.

On the morning of July 9, 2026, officers with Immigration and Customs Enforcement ("ICE") were "working fugitive operations" in south Minneapolis. *Id.* ICE officers noticed a white truck and discovered that it was registered to a noncitizen with no lawful status. *Id.* After stopping the truck, the officers observed that the occupants "appeared nervous by avoiding eye contact and physically shaking." ECF No. 8-1 at 2. The officers then questioned all passengers; Abelardo was among them. *Id.*[3] Abelardo admitted that he did not have lawful status, and ICE officers took Abelardo into custody. *Id.* at 3. Later that same day, ICE served Abelardo with an I-200 administrative arrest warrant, ECF No. 8-2, and a Notice to Appear in removal proceedings, ECF No. 8-3. Abelardo remains detained at the Freeborn County Jail in Albert Lea, Minnesota. ECF No. 1 ¶ 24.

---

[3] Another was Gerardo G. S., who similarly filed a habeas petition asserting many of the same claims brought by Abelardo here. *See Gerardo G. S. v. Easterwood*, No. 26-cv-3480 (NEB/SGE), ECF No. 1 (D. Minn. Aug. 3, 2026); *compare id.* ECF No. 9-4 at 2 *with* ECF No. 8-1 at 2 (noting that Gerardo G. S. and Abelardo were encountered in the same vehicle). On August 21, 2026, United States District Judge Nancy E. Brasel granted Gerardo G. S.'s petition for largely the same reasons that the Court grants Abelardo's petition here. *See Gerardo G. S.*, No. 26-cv-3480 (NEB/SGE), ECF No. 14 at 3–5.

On August 3, 2026, Abelardo filed a habeas petition. ECF No. 1. Abelardo first argues that the Government did not provide him with a bond redetermination hearing in violation of his due process rights. ECF No. 1 ¶¶ 30–37. Abelardo also claims that he is entitled to immediate release because ICE officers violated federal law regarding warrantless immigration arrests. *Id.* ¶¶ 38–42.

The Court ordered the Government to respond to the petition no later than August 10, 2026, with any reply from Abelardo due by August 17, 2026. ECF No. 6. The Government and Abelardo timely responded. ECF Nos. 7, 14.

**ANALYSIS**

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

Abelardo asserts that he is entitled to immediate release because ICE officers violated federal law regarding warrantless immigration arrests. ECF No. 1 ¶¶ 38–42. "As a general rule, it is not a crime for a removable [noncitizen] to remain present in the United States," so police may not arrest "someone based on nothing more than possible removability." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Instead, the "federal statutory structure instructs when it is appropriate to arrest a [noncitizen] during the removal process." *Id.* Relevant here, 8 U.S.C. § 1226(a) allows the Attorney General to

"exercise discretion to issue a warrant for a [noncitizen]'s arrest and detention." *Id.* But if "no federal warrant has been issued, [ICE] officers have more limited authority," *id.* at 408, and ICE may arrest a noncitizen only when an officer has "reason to believe" (1) that a noncitizen is in violation of the immigration laws; and (2) "is likely to escape before a warrant can be obtained for his arrest."[4] 8 U.S.C. § 1357(a)(2). The language "reason to believe" in 8 U.S.C. § 1357(a)(2) "means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

Abelardo argues that ICE officers had no probable cause to conclude that he was likely to escape before a warrant could be obtained. ECF No. 14 at 3–4. "Likely to escape" under 8 U.S.C. § 1357(a)(2) means "'likely to evade detention by immigration officers.'" *Walther Ademir A. S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (quoting *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026)). And that inquiry "considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at 'another clearly identifiable location.'" *Id.* (quoting *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 832 F. Supp. 3d 22, 40 (D.D.C. 2026)). Accordingly, the relevant inquiry is not simply whether Abelardo

---

[4] Although immigration officers do not need to issue a warrant to detain a noncitizen under 8 U.S.C. § 1225(b)(2)(A), warrantless arrests of individuals ultimately detained under 8 U.S.C. § 1225(b)(2)(A) must still comply with the requirements of 8 U.S.C. § 1357(a)(2). *See Muse v. Mullin*, No. 26-cv-4024-CJW-MAR, 2026 WL 1008532, at *2–3 (N.D. Iowa Apr. 14, 2026); *Francisco M. A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026). The Government does not contend otherwise.

was likely to leave the scene of the encounter before ICE officers could obtain a warrant but whether it was likely that ICE officers would be able to locate Abelardo after obtaining a warrant. *Id.*

In support, the Government argues that probable cause exists because Abelardo was "in the back of a functioning motor vehicle at the time" and "had no evidence of lawful status." ECF No. 7 at 22. But the fact that a noncitizen is in a vehicle at the time of the encounter only addresses "one part of 18 U.S.C. § 1357(a)(2)'s temporal requirement—risk of flight at the scene of the encounter." *Jorge Anibal P. P. v. Blanche*, No. 26-cv-3125 (LMP/LIB), 2026 WL 2017765, at *4 (D. Minn. July 13, 2026). It does not address the second part, "risk of flight after the time agents could have obtained a warrant." *Id.* Indeed, that "likely to escape" under 8 U.S.C. § 1357(a)(2) requires consideration of "whether immigration enforcement would be able to arrest the noncitizen at 'another clearly identifiable location,'" already assumes that the noncitizen may not be in precisely the same location of the initial contact. *Walther Ademir A. S.*, 2026 WL 1734906, at *3 (citation omitted). The Government's second point, that Abelardo presented no evidence of lawful status, is only relevant to Section 1357(a)(2)'s requirement that ICE agents have probable cause that a noncitizen is in violation of the immigration laws. It does nothing to show why Abelardo was a flight risk. And to "hold that a noncitizen is likely to escape merely because they are removable would effectively collapse § 1357(a)(2)'s two distinct requirements into one." *Francisco M. A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026).

Notably, the Government does not explain what, *if any*, consideration the arresting ICE agent made as to Abelardo's risk of flight. Far from it, the contemporaneous record suggests that the ICE agent considered Abelardo's unlawful status, by itself, sufficient to justify Abelardo's warrantless arrest. *See* ECF No. 8-1 at 2 (noting that agents only "determined [Abelardo]" was unlawfully in the country and "arrested" him). It is not even clear, for instance, whether the agent asked Abelardo for his home address. But that officers "asked no questions" until after Abelardo's arrest and transportation to Fort Snelling undermines the Government's claim that the ICE officers on the scene had "reason to believe that [Abelardo] would evade detention before a warrant could be issued." *Jorge Anibal P. P.*, 2026 WL 2017765, at *4 (quoting *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1231 (D. Colo. 2025)). Indeed, it is ICE's burden to make a "particularized assessment" into whether the noncitizen is likely to evade detention. *Orellana v. Nobles County*, 230 F. Supp. 3d 934, 946 (D. Minn. 2017). No particularized assessment was done here. Instead, the Government requests that its "arrest-first-and-ask-questions later" approach be blessed by the Court. Section 1357(a)(2) requires more than that.

The Government suggests that the Court's interpretation of 8 U.S.C. § 1357(a)(2), as explained in *Walther Ademir A. S.* and *Jorge Anibal P. P.*, is "patently absurd." ECF No. 7 at 23–26. In its view, all the Government needs to show is that Abelardo was likely to leave the scene of encounter before a warrant was procured. *See id.* The Government overlooks that this "patently absurd" interpretation was promulgated by ICE itself. *See Walther Ademir A. S.*, 2026 WL 1734906, at *3 (relying on a January 2026 memorandum from former ICE Acting Director Todd Lyons, which interpreted the "plain meaning" of

the phrase "likely to escape" in 8 U.S.C. § 1357(a)(2) as likely "to be located at the scene of the encounter *or another clearly identifiable location once an administrative warrant is obtained*" (emphasis added)). And in litigation challenging the Lyons Memo, the Government agreed that "[t]he likelihood of escape determination is not limited to the likelihood that the [noncitizen] will remain at the scene of the encounter." *Escobar Molina*, 832 F. Supp. 3d at 41. And a growing consensus of appellate and district courts has coalesced around this definition of "escape." *See Walther Ademir A. S.*, 2026 WL 1734906, at *3 (collecting cases).

The Government also suggests that its interpretation comports with the dictionary definition of "escape," ECF No. 7 at 22, but that argument doesn't get the Government very far. The Government defines "escape" as to "slip or get away, as from restraint" or the act of "breaking free from confinement, restraint, or an obligation." *Id.* But these definitions only beg the question: get away, or break free, from what? Is it from an initial encounter with immigration officers? Or from ultimate apprehension by immigration officers? These inquiries offer no insight into the ultimate question, and indeed, other dictionary definitions describe "escape" more broadly as relating to "whether an individual will attempt to avoid legal proceedings or evade the administration of justice." *Escobar Molina*, 832 F. Supp. 3d at 40 n.11 (collecting definitions from Black's Law Dictionary and Merriam-Webster). Moreover, the Court hesitates to construe "escape" as expansively as the Government wishes, given that the Supreme Court has described the warrantless arrest authority under 8 U.S.C. § 1357(a)(2) as "limited." *Arizona*, 567 U.S. at 408. Here, a battle of the dictionaries is unlikely to be helpful in illuminating the meaning of "escape."

The Government's assortment of cited cases is also unpersuasive. In *United States v. Puebla-Zamora*, the Eighth Circuit expressly held that a noncitizen's "previous removal for illegal entry established probable cause that he may escape before a warrant could issue." 996 F.3d 535, 538 (8th Cir. 2021); *see Escobar Molina*, 832 F. Supp. 3d at 47–48 (explaining that the likelihood of escape may increase if a noncitizen has reentered the United States after removal because such conduct implicates a "serious and deceitful criminal offense"). Unlike *Puebla-Zamora* and other cases identified by the Government, there is no evidence of criminal or deceitful conduct by Abelardo here. *See, e.g.*, *United States v. Reyes-Orepesa*, 596 F.2d 399, 400 (9th Cir. 1979) (affirming legality of warrantless arrest of a noncitizen who presented immigration officers with forged identification);[5] *United States v. Cantu*, 519 F.2d 494, 497–98 (7th Cir. 1975) (same when noncitizen was suspected of trafficking other noncitizens and was found in a vehicle with other noncitizens);[6] *La Franca v. INS*, 413 F.2d 686, 689 (2d Cir. 1969) (same when noncitizen had been removed twice in the past); *Hon Keung Kung v. Dist. Dir., Immigr. &*

---

[5] When questioned at Fort Snelling, officers determined that Abelardo did not have any fraudulent documents in his possession at the time of arrest, and Abelardo denied using any fraudulent documents for employment or identification purposes. ECF No. 8-1.

[6] To the extent that *Cantu* could be read as permitting warrantless arrests anytime a noncitizen is found in a vehicle, the Court disagrees with such a brightline rule. *See Vladamir G. v. Easterwood*, No. 26-cv-2971 (JMB/ECW), 2026 WL 1786418, at *3 (D. Minn. June 22, 2026) (rejecting a "per se rule that any non-citizen who an officer believes is removable and who is in a vehicle is 'likely to escape'"). Such a rule cannot be squared with the Supreme Court's more recent guidance that 8 U.S.C. § 1357(a)(2) should be interpreted to afford "limited" arrest authority. *Arizona*, 567 U.S. at 408. And *Cantu* itself hedges its holding, explaining that the likelihood-of-success inquiry was a "troublesome question." 519 F.2d at 496.

*Naturalization Serv.*, 356 F. Supp. 571, 573, 576 (E.D. Mo. 1973) (finding no violation of 8 U.S.C. § 1357(a)(2) when noncitizen deserted a ship on which he had been a crewman); *Tsimounis v. Holland*, 132 F. Supp. 754, 757 (E.D. Pa. 1955) (same).

The only case cited by the Government not to involve criminal or deceitful conduct appears to be *United States v. Meza-Campos*, 500 F.2d 33, 34 (9th Cir. 1974). In that case, the Ninth Circuit blessed a warrantless arrest when the noncitizen admitted to an immigration officer that he was in the United States without legal status and appeared extremely nervous, as if "he was looking for an opportunity to run." *Id.* The noncitizen's argument that he was not likely to escape "ha[d] some persuasion." *Id.* But the Ninth Circuit ultimately rejected it because, if the noncitizen were correct, then "it would seem that an arresting immigration officer could never have reason to believe that the arrestee was likely to escape, absent an on-the-scene admission of the arrestee to that effect." *Id.* But that conclusion doesn't make sense in this context. *Puebla-Zamora*, *Cantu*, *La Franca*, *Hon Keung Kung*, and *Tsimounis* all demonstrate that a likelihood of escape may develop from circumstances other than a noncitizen's explicit admission that he is going to escape. And although an immigration officer is "unable to look into a noncitizen's mind" to determine whether they are likely to escape, *id.,* they can (and must) ask sufficient questions to shed light on factors relevant to likelihood of escape. The Government's preferred approach—asking as few questions as possible in case the answers undermine a finding of escape risk—cannot be squared with the "particularized assessment" required by 8 U.S.C. § 1357(a)(2). *Orellana*, 230 F. Supp. 3d at 946; *see Ramirez Ovando*, 810 F. Supp. 3d at 1331 (explaining that "the total absence of questions" on topics related to risk

of escape "strongly indicates that the officers did not seek what they did not wish to find"). The Court therefore adheres to its interpretation of likelihood of escape under 8 U.S.C. § 1357(a)(2). *See Walther Ademir A. S.*, 2026 WL 1734906, at *3; *Jorge Anibal P. P.*, 2026 WL 2017765, at *4.

Finally, the Government argues that even if the officer made an unlawful warrantless arrest, the proper remedy is not release. ECF No. 7 at 26–27. Again, the Government's cited cases are unavailing. Take first the Government's reliance on *Gerstein v. Pugh*, where the Supreme Court explained that while it "has expressed a preference for the use of arrest warrants when feasible," it "has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." 420 U.S. 103, 113 (1975). As explained above, the arrest here was *not* supported by probable cause.

The Government also cites cases explaining that an unlawful arrest is not a bar to "subsequent prosecution," a defense to a "valid conviction," or a get-out-of-removal-proceedings card. ECF No. 7 at 27–28 (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039–42 (1984); *United States v. Crews*, 445 U.S. 463, 474 (1980); and *United States v. Blue*, 384 U.S. 251, 255 (1966)). But those cases are readily distinguishable because Abelardo is not asking the Court to interfere with his removal proceedings. "Seeking release from custody in an immigration habeas case based on an illegal arrest is not akin to a criminal defendant's claim that his unlawful arrest should prohibit the government from prosecuting him for a crime, nor is it like a noncitizen's effort to prohibit the government from pursuing removal proceedings." *Emily Andreina N. V. v. Blanche*, No. 26-cv-2570 (KMM/EMB), 2026 WL 2209844, at *4 (D. Minn. July 31, 2026). The reasoning of these

cases therefore does not apply to Abelardo "who is seeking release from custody—not asking this Court to prohibit removal proceedings against him." *Ruben C. R. v. Mullin*, No. 26-cv-2950 (NEB/DTS), ECF No. 13 at 6 (D. Minn. Aug. 7, 2026).

Because the Government did not have probable cause to conclude that Abelardo was "likely to escape" when they arrested him without a warrant, the Court orders the Government to release Abelardo.[7]

## CONCLUSION

For these reasons, and based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Abelardo's Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED**;

2. The Government is **ORDERED** to release Abelardo from custody and with all personal property by no later than 5 p.m. on Friday, August 28, 2026;

3. The Government is **ORDERED** to file a status report certifying compliance with this Order by no later than 5 p.m. on August 31, 2026; and

4. If the Government seeks to retain Abelardo's property, the Government's status report must include: (a) the property retained; and (b) the legal basis on which the property is retained.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 27, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge

[7] Because the Court grants Abelardo release from custody on statutory grounds, the Court need not address Abelardo's constitutional arguments.